# No. 24-1343

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

COUNCIL FOR RESPONSIBLE NUTRITION,

*Plaintiff-Appellant,*

v.

LETITIA JAMES,
in her official capacity as New York Attorney General,

*Defendant-Appellee,*

_____

On Appeal from the United States District Court for the
Southern District of New York, No. 24-cv-1881

_____

**BRIEF FOR *AMICI CURIAE* THE CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA, THE CONSUMER
HEALTHCARE PRODUCTS ASSOCIATION, FMI—THE FOOD
INDUSTRY ASSOCIATION, AND THE NATIONAL
ASSOCIATION OF CHAIN DRUG STORES, INC.
IN SUPPORT OF APPELLANT**

_____

Christopher Walker
Tara S. Morrissey
U.S. CHAMBER
LITIGATION CENTER
1615 H Street NW
Washington, DC 20062
(202) 463-5337

Jeffrey S. Bucholtz
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jbucholtz@kslaw.com

*Counsel for Amici Curiae*

July 10, 2024        *(Additional counsel listed on inside cover)*

Matthew V.H. Noller
KING & SPALDING LLP
50 California Street
Suite 3300
San Francisco, CA 94111
(415) 318-1200

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America ("Chamber") is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

The Consumer Healthcare Products Association ("CHPA") is a nonprofit, tax-exempt organization incorporated in Delaware and headquartered in Washington, DC. CHPA has no parent corporation, and no publicly held company has 10% or greater ownership in CHPA.

Food Marketplace Inc. dba FMI—The Food Industry Association ("FMI") is a nonprofit, tax-exempt organization incorporated in the District of Columbia and headquartered in Virginia. FMI has no parent corporation, and no publicly held company has 10% or greater ownership in FMI.

The National Association of Chain Drug Stores, Inc. ("NACDS") is a non-profit, tax-exempt organization incorporated in Virginia. NACDS has no parent corporation, and no publicly held company has 10% or greater ownership in NACDS.

# TABLE OF CONTENTS

Corporate Disclosure Statement.................................................................i

Interest of *Amici Curiae*..........................................................................1

Introduction and Summary of Argument..................................................3

Argument ..................................................................................................5

I.    General Business Law § 391-oo uses protected speech as a trigger for legal restrictions and requirements ..............................5

II.    General Business Law § 391-oo burdens protected speech and must satisfy First Amendment scrutiny ...................................9

Conclusion...............................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett,*
 564 U.S. 721 (2011) .................................................. 9, 10, 14

*Cent. Hudson Gas & Elec. Corp.*
 *v. Pub. Serv. Comm'n of N.Y.,*
 447 U.S. 557 (1980) ................................................... 16

*CFTC v. Vartuli,*
 228 F.3d 94 (2d Cir. 2000) ...................................... 13

*Clementine Co. v. Adams,*
 74 F.4th 77 (2d Cir. 2023) .............................. 14, 15, 16

*Cornelio v. Connecticut,*
 32 F.4th 160 (2d Cir. 2022) ............................... *passim*

*Davis v. FEC,*
 554 U.S. 724 (2008) ..................................................... 9

*Dawson v. Delaware,*
 503 U.S. 159 (1992) ..................................................... 8

*Expressions Hair Design v. Schneiderman,*
 581 U.S. 37 (2017) .............................................. 3, 14

*Farrell v. Burke,*
 449 F.3d 470 (2d Cir. 2006) ................................... 17

*Holder v. Humanitarian Law Project,*
 561 U.S. 1 (2010) ............................................... 3, 5, 14

*Honeyfund.com Inc. v. Governor,*
 94 F.4th 1272 (11th Cir. 2024) ..................... 3, 4, 14, 16

*Lorillard Tobacco Co. v. Reilly,*
 533 U.S. 525 (2001) ........................................... 13, 15

*Smith v. Goguen,*
415 U.S. 566 (1974) ...................................................................... 17

*Sorrell v. IMS Health Inc.,*
564 U.S. 552 (2011) ................................................................. 7, 14

*Turner Broad. Sys., Inc. v. FCC,*
512 U.S. 622 (1994) ...................................................................... 13

*United States v. Caronia,*
703 F.3d 149 (2d Cir. 2012) ..................................................... 16, 17

*United States v. Kahn,*
5 F.4th 167 (2d Cir. 2021) ............................................................... 8

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
455 U.S. 489 (1982) ...................................................................... 15

*Vugo, Inc. v. City of New York,*
931 F.3d 42 (2d Cir. 2019) ............................................................ 16

*Zieper v. Metzinger,*
474 F.3d 60 (2d Cir. 2007) ............................................................ 15

## Statutes

N.Y. Gen. Bus. Law § 391-oo............................................................ *passim*

## INTEREST OF *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Consumer Healthcare Products Association ("CHPA") is a nonprofit association representing manufacturers of over-the-counter (OTC) medicines, dietary supplements, and consumer medical devices. CHPA works to empower self-care by preserving and expanding choice and availability of consumer healthcare products. As such, CHPA

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. The parties have consented to the filing of this brief.

member products may be subject to the labeling, advertising, marketing, and placement provisions of New York's law.

FMI—The Food Industry Association works with and on behalf of the food industry, representing an $800 billion industry with nearly six million employees. FMI membership includes the entire spectrum of the food industry: from retailers who sell to consumers, to producers who supply food, as well as the diverse companies providing critical services.

The National Association of Chain Drug Stores, Inc. ("NACDS") is comprised of chains of diverse sizes that operate standalone pharmacies and pharmacies in grocery and mass retail settings. NACDS members include regional chains, with as few as four stores, as well as national chains.

*Amici curiae* have a strong interest in this appeal, which directly implicates their members' First Amendment rights. *Amici*'s members include companies subject to the statute at issue, N.Y. Gen. Bus. Law § 391-oo, as well as other statutes that burden protected speech by using that speech to trigger onerous legal restrictions and requirements. *Amici* have an interest in ensuring that courts subject such statutes to appropriate First Amendment scrutiny, which the district court here

failed to do.

## INTRODUCTION AND
## SUMMARY OF ARGUMENT

The statute at issue in this case, New York's General Business Law § 391-oo, reflects the distressing ease with which governments may seek "to control speech by recharacterizing it as conduct." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1275 (11th Cir. 2024); *see, e.g.*, *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 46-48 (2017) (holding New York law purporting to regulate economic conduct in fact regulated speech). While the government seeks to defend that statute as merely regulating the conduct of selling certain weight-loss or muscle-building supplements, the statute in fact targets and burdens speech protected by the First Amendment. It does this by using speech—the labeling, advertisements, and other statements through which manufacturers and retailers market their products—to define the products to which the statute's restrictions and requirements apply. Even if those restrictions and requirements are "directed at conduct," using speech as the "trigger[]" for imposing them implicates the First Amendment. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010); *accord Cornelio v. Connecticut*, 32 F.4th 160, 169 (2d Cir. 2022).

3

The district court failed to recognize that point. In denying the Council for Responsible Nutrition's ("CRN") motion for a preliminary injunction, the court held as a threshold matter that the First Amendment does not even *apply* to General Business Law § 391-oo. That erroneous holding, if allowed to stand, would endanger fundamental First Amendment freedoms by empowering governments to use supposed content restrictions "as a smokescreen for regulating speech." *Honeyfund.com*, 94 F.4th at 1278. This Court should, therefore, reject the district court's reasoning and make clear that General Business Law § 391-oo is subject to scrutiny under the First Amendment.

That holding alone would suffice to reverse the district court's decision. Under the First Amendment, General Business Law § 391-oo must at least survive the intermediate scrutiny applicable to commercial speech restrictions. The First Amendment also requires that the statute define its terms with more specificity than is required for mere conduct regulations. And while the district court purported to analyze General Business Law § 391-oo under intermediate scrutiny and the void-for-vagueness doctrine, its treatment of both those issues was infected from the outset by its threshold holding that the First Amendment does not

apply. Therefore, this Court should reverse the district court's decision.

## ARGUMENT

The district court erred at the threshold of its First Amendment analysis by holding that General Business Law § 391-oo does not implicate the First Amendment at all. The district court's holding that the statute is a mere conduct regulation misreads the statute and misapplies the Supreme Court's and this Court's precedent. On its face, the statute uses manufacturers' and retailers' protected speech as the trigger for imposing burdensome restrictions and requirements on those speakers. That implicates the First Amendment. *E.g.*, *Humanitarian Law Project*, 561 U.S. at 28; *Cornelio*, 32 F.4th at 169. The district court's contrary holding requires reversal.

## I.     General Business Law § 391-oo uses protected speech as a trigger for legal restrictions and requirements.

General Business Law § 391-oo imposes restrictions on the sale of "over-the-counter diet pill[s]" and "dietary supplement[s] for weight loss or muscle building." N.Y. Gen. Bus. Law § 391-oo(2). Specifically, it provides that such products cannot be sold "within this state to any person under eighteen years of age." *Id.*; *see also id.* § 391-oo(4). It also imposes affirmative requirements on retailers related to that age

restriction. *Id.* § 391-oo(2)-(4). Although some restrictions on the sale of specified products could be understood as regulating only non-speech conduct, the provisions of this statute foreclose any such reading. Those provisions, on their face, use protected speech as the *trigger* that determines whether or not the statute applies to a particular product.

The statute's use of speech begins with its definition of the "dietary supplements for weight loss and muscle building" and "over-the-counter diet pills" to which it applies. The statute unambiguously defines those key terms by reference to manufacturers' and retailers' speech. A product is a "dietary supplement[] for weight loss and muscle building" if it is "labeled, marketed, or otherwise represented for the purpose of achieving weight loss or muscle building." *Id.* § 391-oo(1)(a). Similarly, a product is an "[o]ver-the-counter diet pill[]" if it is "labeled, marketed, or otherwise represented for the purpose of achieving weight loss." *Id.* § 391-oo(1)(b). As a definitional matter, therefore, whether a product is subject to the statute turns on what a manufacturer or retailer says about it.

The statute's definition of "labeled, marketed, or otherwise represented" confirms this point. The statute tasks courts with "determining whether an over-the-counter diet pill or dietary supplement

6

is labeled, marketed, or otherwise represented for the purpose of achieving weight loss or muscle building," and it provides a list of "factors" that courts "shall consider" when doing so. *Id.* § 391-oo(6). All but one of those factors are speech-based. Courts must consider "statements or images" on "the product's labeling or marketing." *Id.* § 391-oo(6)(b). They must consider "whether the product or its ingredients are otherwise represented for the purpose of achieving weight loss or building muscle." *Id.* § 391-oo(6)(c). And they must consider how a "retailer has categorized the dietary supplement," either by "placing signs, categorizing, or tagging the supplement" or through "display[s], advertisement[s], webpage[s]," and other "represent[ations]." *Id.* § 391-oo(6)(d).[2]

As a result, whether a product is subject to General Business Law § 391-oo will often depend on manufacturers' and retailers' "[s]peech in aid of [dietary supplement] marketing," which "is a form of expression protected by the Free Speech Clause of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557 (2011). The district court held

---

[2] The sole speech-neutral factor is "whether the product contains" certain ingredients. *Id.* § 391-oo(6)(a). And that factor is not dispositive, as even products that do not contain those ingredients can qualify based solely on speech about the product. *Id.* § 391-oo(6).

7

otherwise based on a misreading of the statute. The district court stated that "[c]ourts *may consider* . . . the labeling, marketing, grouping, or representation of products," which the court characterized as a mere "explanatory provision aiming to assist courts with enforcement of the [s]tatute." JA185 (emphasis in original). Of course, reliance on protected speech implicates the First Amendment whether it is mandated or merely permitted by statute. *See Dawson v. Delaware*, 503 U.S. 159, 168-69 (1992) (holding that discretionary reliance on defendant's Aryan Brotherhood membership at sentencing violated First Amendment). But the statute does not, as the court stated, merely *permit* courts to consider manufacturers' and retailers' speech. It *requires* them to do so by using the mandatory term "shall." N.Y. Gen. Bus. Law § 391-oo(6); *see United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) ("The word 'shall,' in a statute, indicates a command; what follows the word 'shall' is mandatory, not precatory." (cleaned up)). So the statute does far more than "assist," JA185, courts in assessing whether a product "is labeled, marketed, or otherwise represented for the purpose of achieving weight loss or muscle building," N.Y. Gen. Bus. Law § 391-oo(6). The provision provides substantive *content* to that statutory language, defining it almost entirely by reference to speech.

8

## II.  General Business Law § 391-oo burdens protected speech and must satisfy First Amendment scrutiny.

General Business Law § 391-oo's use of protected speech as a trigger for new restrictions and requirements burdens that speech. Once a manufacturer's or retailer's speech transforms a product into an "over-the-counter diet pill" or "dietary supplement for weight loss or muscle building," the manufacturer or retailer becomes subject to a suite of restrictions and requirements that reduce the effectiveness of its speech and impose substantial costs on its business. Such speech-triggered "burdens . . . implicate[] the First Amendment." *Cornelio*, 32 F.4th at 169.

The Supreme Court has held that the First Amendment applies when, as in this case, the government uses protected speech to trigger disincentives to that speech. *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 737-43, 747 (2011); *Davis v. FEC*, 554 U.S. 724, 738-40 (2008). In those cases, the Court invalidated campaign-finance laws that used one candidate's expenditures to "trigger" public financing to the candidate's opponents. *Freedom Club PAC*, 564 U.S. at 737-38; *accord Davis*, 554 U.S. at 738-40. Such a regime, the Court held, would "reduce[]" and "burden speech" by making it "less effective." *Freedom Club PAC*, 564 U.S. at 741, 747 (cleaned up). It also "forc[ed]" candidates

9

into a speech-burdening "choice—trigger matching funds, change your message, or do not speak." *Id.* at 739.

General Business Law § 391-oo has a similar effect. By imposing its new restrictions "in direct response to" a manufacturer's or retailer's marketing speech, it makes that speech "less effective" at its purpose of attracting customers. *Freedom Club PAC*, 564 U.S. at 747 (cleaned up). And it forces manufacturers and retailers into a choice between, on the one hand, subjecting their products to restrictions and, on the other hand, not speaking accurately and persuasively about their products. That "choice" inherently "burdens" their speech. *Id.* at 745. Naturally, if manufacturers and retailers know that their advertising will, by operation of General Business Law § 391-oo, *reduce* their customers and revenues, they will be less inclined to advertise.

The burdens General Business Law § 391-oo imposes in response to protected speech do not stop there. In addition to banning the sale of covered products to certain customers, the statute imposes affirmative requirements on retailers. It requires "[r]etail establishments" to "require proof of legal age for purchase of such products." N.Y. Gen. Bus. Law

§ 391-oo(2).[3] Similarly, it requires any "delivery seller, including an online retailer," to "use a method of mailing or shipping" that requires a signature from an adult with "a valid, government-issued identification bearing a photograph on the individual." *Id.* § 391-oo(4). It also imposes data-gathering and -storage requirements on retailers that elect to "perform a transaction scan as a precondition for the purchase of over-the-counter diet pills or dietary supplements for weight loss or muscle building." *Id.* § 391-oo(3).

These burdens are accompanied by speech-chilling penalties. Any violation of any of these or other requirements may be punished in a "special proceeding" initiated by the Attorney General, in which the court can impose injunctions or statutory penalties of up to $500 "without requiring proof that any person has, in fact, been injured or damaged." *Id.* § 391-oo(5). The statute does not expressly require that violations be committed with any particular state of mind, potentially allowing the

---

[3] The statute provides that "[s]uch identification need not be required of any individual who reasonably appears to be at least twenty-five years of age," but that exception is illusory because a customer's "appearance shall not constitute a defense in any proceeding alleging the sale of any over-the-counter diet pills and dietary supplements for weight loss or muscle building to an individual under eighteen years of age." *Id.*

Attorney General to seek penalties for accidental violations no matter how extensive the retailer's attempts to comply.

These requirements are highly burdensome for retailers, including many of the *amici*'s members. Designing and implementing state-wide compliance controls is complex and expensive, particularly when any lapse—including, arguably, reasonable and good-faith lapses—can be punished by the government in court. The requirements for online retailers create additional problems, as many common delivery services lack the technology to perform the identification checks required by the statute. The practical result is that many New York residents are unable to purchase the products covered by General Business Law § 391-oo even if they are over eighteen.

These burdens "implicate[] the First Amendment" because the statute "imposes [them] precisely when" a manufacturer or retailer "decides to engage in . . . speech." *Cornelio*, 32 F.4th at 169. In *Cornelio*, this Court applied the First Amendment to a statute requiring registered sex offenders to notify the state when they "create[d] a new 'electronic mail address, instant message address or other similar Internet communication identifier.'" *Id.* Even though communication identifiers

are not themselves protected speech, this Court held that the statute "burden[ed] a registrant's ability and willingness to speak on the Internet" because the disclosure requirement was triggered by the registrant's "deci[sion] to engage in online speech." *Id.* (cleaned up). Similarly here, General Business Law § 391-oo "burdens" and "deters" manufacturers' and retailers' protected speech by "impos[ing] 'special obligations' or 'special burdens'" on them when they "engage[] in speech." *Cornelio*, 32 F.4th at 169 (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994)); *cf. CFTC v. Vartuli*, 228 F.3d 94, 112 (2d Cir. 2000) (holding that requirement to register with Commodity Futures Trading Commission triggered by intent to engage in "protected speech" would require "careful judicial scrutiny").

For these reasons, General Business Law § 391-oo must satisfy "some measure of heightened First Amendment scrutiny." *Cornelio*, 32 F.4th at 169 (cleaned up). The district court erred in holding otherwise based on its conclusion that the statute "regulates conduct not speech." JA186. To qualify "as a mere regulation of conduct," a "regulation must be *unrelated* to expression." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 567 (2001) (emphasis added). And for all the reasons given above,

General Business Law § 391-oo is certainly not "unrelated to expression." *Id.* It expressly requires consideration of manufacturers' and retailers' protected speech as a "trigger[]" for imposing substantial legal burdens on those speakers. *Humanitarian Law Project*, 561 U.S. at 28; *see also Expressions Hair Design*, 581 U.S. at 46-48 (holding statute addressing credit card surcharges regulated speech by limiting how merchants could communicate prices).

That requires First Amendment scrutiny, and it would do so even if the district court were correct that General Business Law § 391-oo "does not regulate what . . . sellers 'may or may not say.'" JA186 (quoting *Clementine Co. v. Adams*, 74 F.4th 77, 86 (2d Cir. 2023)). The government "may no more silence unwanted speech by burdening its utterance than by censoring its content," *Honeyfund.com*, 94 F.4th at 1279 (cleaned up), and a statute can "burden speech" even if it does not forbid speech or require anyone "to express a message he disagrees with," *Freedom Club PAC*, 564 U.S. at 742 (cleaned up); *see also Sorrell*, 564 U.S. at 565-66 (holding that the First Amendment applies to laws "burdening" speech no less than to laws "banning" it). Indeed, this Court has found it "well-established that First Amendment rights may be violated by the chilling

14

effect of governmental action that falls short of a direct prohibition against speech," *Cornelio*, 32 F.4th at 169 (quoting *Zieper v. Metzinger*, 474 F.3d 60, 65 (2d Cir. 2007)).

The authorities the district court relied on do not suggest otherwise. The Supreme Court did not uphold a "prohibition on self-service displays" for tobacco products in *Lorillard* because the First Amendment did not apply, JA184, but because the prohibition "withst[ood] First Amendment scrutiny" as an "appropriately narrow means of advancing" a "substantial [state] interest." *Lorillard*, 533 U.S. at 569.[4] And the statute this Court upheld in *Clementine* was entirely unrelated to speech; it simply "provided that proof of vaccination would be mandatory for patrons and staff at various indoor businesses." 74 F.4th at 81. This Court held that applying the statute to theaters did not violate the First Amendment merely because theaters "happen to be engaged in a business involving

---

[4] Similarly, the district court misread *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), as holding "that an ordinance that prohibited the sale of certain items 'designed or marketed for use' with drugs" did not implicate the First Amendment because it regulated only conduct. JA183. In fact, the Supreme Court recognized that the ordinance *did* regulate "commercial speech"—but it was speech "promoting or encouraging illegal drug use," which "a government may regulate or ban entirely" as "speech proposing an illegal transaction." 455 U.S. at 496 (emphasis omitted). That rationale has no application here.

First Amendment-protected speech." *Id.* at 86. But the Court emphasized that the statute applied equally "to a wide variety of indoor venues, most of which would be hard-pressed to argue that there is any speech involved in their services," and did not apply to theaters "because of the content of their speech or the fact that they were engaging in speech at all." *Id.*

Here, in contrast, General Business Law § 391-oo *does* apply to manufacturers and retailers "because of the content of their speech," *id.*—its provisions apply (or not) based on how manufacturers and retailers market their products. Because "speech defines the contours" of its restrictions and requirements, the First Amendment applies. *Honeyfund.com*, 94 F.4th at 1279.

At a minimum, therefore, the government must satisfy intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980); *see United States v. Caronia*, 703 F.3d 149, 165-66 (2d Cir. 2012).[5] Under *Central Hudson*, a regulation of lawful commercial speech must "directly

---

[5] In fact, there is a strong argument that General Business Law § 391-oo is subject to *strict* scrutiny because it "imposes content- and speaker-based restrictions on speech." *Caronia*, 703 F.3d at 164-65; *see Vugo, Inc. v. City of New York*, 931 F.3d 42, 50 n.7 (2d Cir. 2019). The district court did not address this argument.

advance" a "substantial" governmental interest. *Caronia*, 703 F.3d at 164. The regulation must also be "narrowly drawn," meaning it "may not be more extensive than necessary to serve the interest." *Id.* (quotation marks omitted). The district court's application of this test, however, was infected by its threshold conclusion that "the [s]tatute does not implicate the First Amendment." JA187. That alone justifies reversing the district court's decision.

The district court's threshold error also fatally undermines its consideration of CRN's vagueness challenge to General Business Law § 391-oo. The court relied on cases addressing vagueness challenges solely under the Due Process Clause, without considering the First Amendment's effect on the analysis. JA193. But "vagueness in the law is particularly troubling when First Amendment rights are involved." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006). As a result, when a statute implicates the First Amendment, "the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974). The district court did not demand that level of specificity, which led it to overlook numerous areas of vagueness in how the statute identifies the categories of speakers and speech to

which it applies. Opening Br.49-54. The district court's failure to apply the appropriate vagueness standard also supports reversal.

## CONCLUSION

For the reasons set forth above, this Court should reverse the decision of the district court.

Respectfully submitted,

*s/Jeffrey S. Bucholtz*

Christopher Walker
Tara S. Morrissey
U.S. CHAMBER
LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

Jeffrey S. Bucholtz
*Counsel of Record*
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jbucholtz@kslaw.com

Matthew V.H. Noller
KING & SPALDING LLP
50 California Street
Suite 3300
San Francisco, CA 94111
(415) 318-1200

*Counsel for Amici Curiae*

July 10, 2024

18

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Second Circuit Local Rule 32.1(a)(4) because this brief contains 3,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Date: July 10, 2024

*s/ Jeffrey S. Bucholtz*
Jeffrey S. Bucholtz

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ Jeffrey S. Bucholtz*
Jeffrey S. Bucholtz

*Counsel for Amici Curiae*